**BURROWS, d. b. a. WARREN GARBAGE AGENCY v. WARREN (City).**

Common Pleas Court, Trumbull County.

No. 59501. Decided March 14, 1951.

Paul E. Kightlinger, Warren, for plaintiff.
Joseph Craciun, Warren, for defendant City of Warren.

## OPINION

By THOMAS, J.

Plaintiff seeks declaratory relief in connection with his agreement of August 5, 1950 (herein called the Agreement) with the Board of Health of the City of Warren, by which Agreement he is given the "exclusive right to collect and remove garbage within the city of Warren" for a term of two years commencing October 1, 1950, and ending September 30, 1952.

First—Plaintiff asks the court to find invalid that portion of Section 8 of the Agreement which provides that "Garbage as defined in Ordinance No. 3924 shall include * * * tin cans. (Tin cans are those cans from which food is consumed by the family in the usual course by conducting a household.)"

Secondly—it is requested by the plaintiff that the court find that Ordinance 3994/50 has nullified his Agreement, and further it is requested that the court order the Board of Health to proceed with advertising "for separate bids and contracts for the collection of Garbage and Rubbish, and for both," as directed by Ordinance 3994/50. The case was presented on the pleadings, stipulations, mutual exhibits, oral evidence, briefs and oral argument of Counsel.

The plaintiff, the defendant city, and the defendant Board of Health, have rights and legal relations which are affected both by contract and Municipal Ordinance. They are, therefore entitled to have a judicial determination of the contested questions which the plaintiff raises concerning the construction and validity of Section 8 of the Agreement, and of the effect on the Agreement of Ordinances 3924/50 and 3994/50 of the City of Warren. Sec. 12102-2 GC, and L. & A. Ins. Co. v. Jones, 152 Oh St 287, 40 O. O. 326.

It is admitted that the plaintiff has fallen behind in his garbage collections. One of the reasons advanced for this breakdown in this vital public health service is the necessity, under Section 8 of the Agreement, for the plaintiff to collect "tin cans" as well as animal and vegetable refuse. At least fifty per cent or more of the bulk collected by the plaintiff is "tin cans," the evidence indicated. If "tin cans" were not being picked up, plaintiff says that there would be a corresponding increase in the amount of garbage carried in each load. Faster service would thus result, plaintiff insists.

It is established too that much confusion now exists with reference to the effect on the Agreement of Ordinance 3994/50 passed December 18, 1950.

The plaintiff wrote the Board of Health on January 3, 1951 that "the fact that Council has passed an Ordinance declaring its intent to advertise for bids in contemplation of a new contract or contracts for garbage and rubbish separately, has further confused the matter." Plaintiff then added "It has become necessary that I ask for termination of the contract dated August 5, 1950."

Subsequently the Board of Health took action refusing to terminate the Agreement, and indicating that it would take steps to forfeit his $5,000.00 faithful performance bond, unless he carried out the Agreement.

In view of these facts it is apparent that his "action is within the spirit of the declaratory judgment act, a real justiciable controversy exists between adverse parties, and speedy relief is necessary to the preservation of rights which may otherwise be impaired or lost." L. & A. Ins. Co. v. Jones,

supra. A case is therefore presented which justifies the granting of declaratory relief.

The first question raised by the plaintiff may now be considered.

Is That Portion of Section 8 of The Agreement Valid Which Provides That "Garbage as defined in Ordinance No. 3924 shall include * * * tin cans, etc."

Section 8 of the Agreement in its entirety provides that:

"Garbage as defined in Ordinance No. 3924 shall also include sweepings, paper, wood, carton boxes and tin cans (Tin cans are those cans from which food is consumed by the family in the usual course of conducting a household).

However "tin cans" are not embraced within the definition of Garbage which is contained in Section 1(a) of Ordinance 3924/50, the Ordinance which fathered the Agreement; Section 1 (a) reads:

"That the word "garbage" as herein used is intended and shall be construed to mean and include fruits, vegetables, meats or any refuse accumulation of fruit, vegetable, or animal matter or anything whatsoever which will decompose and become foul, offensive or dangerous to health."

The conclusion that Section 1 (a) does not include "tin cans" within the definition of garbage is reinforced by the express inclusion of "tin cans" in the definition of "Rubbish" which appears in Section 1 (b) and which reads:

"The word "rubbish" as herein used is intended and shall be construed to mean and include all inorganic refuse matter such as tin cans, glass, ashes, and sweepings, and shall also include wood, paper and carton boxes."

Unless there is some other provision in Ordinance 3924/50 which modifies the plain unequivocal intent of Section 1 (a) and (b) to regard and classify "tin cans" as Rubbish, and not as Garbage, it follows that the language of Section 8 which designates "tin cans" as Garbage does not conform to Ordinance 3924/50.

Only one other section of the Ordinance conceivably might modify Section 1 (a) and (b).

This is the second paragraph of Section 6 which provides that:

"The holder of the garbage contract shall collect all combustible refuse including lawn, hedge, and tree trimmings, which shall be placed in suitable containers or shall be tied in bundles not to exceed three feet in length, arranged in such manner as to be easily handled by the collector."

Undoubtedly the first part of Section 8 is thereby warranted. For "sweepings, paper, wood," and "carton boxes, patently qualify as 'combustible refuse.'"

But just as patently, "tin cans" according to common knowledge and human experience do not constitute "combustible refuse."

There is good reason to believe, as the evidence indicates, that when the Agreement was signed it was understood that "tin cans" should be within Section Eight's definition of garbage (thus necessitating collection) only if "tin cans" could be burned in the new incinerator.

If the designation of "tin cans" as Garbage in Section 8 hinged on the success of the experiment in burning tin cans in the new incinerator it is necessary to ascertain the success or failure of the experiment.

It is agreed by all parties that though, according to the incinerator's sales promotion, the incinerator was represented to have tin can consuming propensities, in actual performance, the incinerator does not burn tin cans.

"Tin cans" not being "combustible refuse" the Garbage Contractor cannot be required to collect "tin cans" by reason of the last paragraph of Section 6 of Ordinance 3924/50.

It is concluded that the designation of "tin cans" as garbage in Section 8 of the Agreement, is inconsistent and irreconcilable with the plain terms of Ordinance 3924/50.

Nevertheless defendant city contends that the plaintiff is bound by Section 8 because he consented to its inclusion in the agreement.

Counsel for the city says in its brief:

"As to (b) that said Contract of August 5, 1950, is invalid and unenforceable against Plaintiff by reason of nonconformity with the Ordinance No. 3924/50 and Plaintiff's bid of July 7th, 1950, it is the city's contention that plaintiff was fully informed and agreed to changes made in the contract and was aware of and consented to changes before and at the time he presented his bid in discussion with city officials."

One answer to this contention is that the evidence shows that the parties agreed to Section Eight's designation of "tin cans" as garbage only on condition that "tin cans" could be burned in the new incinerator. Now that it is definitely established that the new incinerator will not burn "tin cans" the justification for this latter portion of Section 8 ceases. Its justification being at an end that part of Section 8 which designates "tin cans" as garbage ceases to have further validity.

But a more fundamental reason exists for invalidating the attempt of the parties to alter and change the definition of garbage, as contained in Section 1 (a) so as to embrace "tin cans."

To uphold the validity of Section Eight's designation of "tin cans" as garbage, when Ordinance 3924/50 manifestly prohibits such a designation, would constitute an unlawful delegation of legislative power to the plaintiff and the board of health.

To uphold the validity of Section Eight's designation of "tin cans" as Garbage, when Ordinance 3924/50 manifestly prohibits such a designation, would constitute an unlawful delegation of legislative power to the plaintiff and the Board of Health.

Only the City Council, not the Board of Health, has the power to legislate with reference to providing for the collection and removal of garbage and rubbish.

Council derives power to provide for the collection and removal of garbage and rubbish pursuant to the powers of local self government given to municipalities under **Section 3, Article 18 of the Ohio Constitution.** It may thereby adopt and enforce sanitary regulations which may include the establishment of a garbage and rubbish collection service as a municipal service. **City of Canton v. Van Voorhis, 14 O. O. 413.** If a municipal garbage and rubbish collection service is established its management is entrusted to the Director of Public Service by §4326 GC.

Council may also legislate in this field by virtue of several statutory grants of power. **Secs 3649, 4470 and 4463 GC.**

**Sec. 3649 GC** is a general grant of power "to provide for the collection and disposition of sewage, garbage, etc."

**Sec. 4470 GC** permits the council to directly contract for the collection and removal of garbage and other solid waste substances. Such a contract would undoubtedly be entered into and conducted to performance by the Director of Public Service, §4211 G C.

Or city council, by §4463 GC, may empower the Board of Health with authority to contract for the collection of garbage and offal (which term is broad enough to include rubbish).

Historically §4463 GC is a vestigial remainder of a past era. It was enacted when municpal boards of health were departments of municipal government.

Boards of health since 1919 and the passage of the Hughes Act (108 Ohio Laws, part 1, 236) and the Griswold Act (108 Ohio Laws, part 2, 1085) as amended, are no longer part of local governments, but are city health districts which are separate political subdivisions of the state independent of the city with which they are coterminus. **State, ex rel., v. Underwood, 137 Oh St, 1** and **5.**

Boards of health are vested with numerous powers relating to the safe guarding and preservation of the public health

(Secs. 4420, 4421, 4424, 4425, 4462, 4464 GC). In exercising any of these powers a board of health may exercise legislative authority. It may issue orders and regulations which have the same force and effect as municipal ordinances, §4413 GC.

However, boards of health are **not** directly vested with statutory power to contract for the collection and removal of garbage and offal.

The only authority by which a board of health may contract for the collection and removal of garbage and offal, it receives at the discretion of a city council under §4463 GC.

Sec. 4463 GC, says that "The Council may empower the Board of Health to employ such number of scavengers for the removal of swill, garbage and offal * * * as it deems necessary." And that "In such case the Board may make contracts therefor, subject to the approval of Council * * *."

It is plainly implicit that in exercising the power delegated to it by council under §4463 GC, the board of health is restricted by the nature and the extent of the power granted.

A board of health, in carrying out council's delegation of power necessarily is acting administratively, and not legislatively. It therefore would have no power to supercede the express commands and specific restrictions imposed by the very ordinance which gave the board its sole power to act in the matter.

Hence the Board of Health is powerless to promulgate a contract which in any respect contravenes or is repugnant to Ordinance 3924/50. Being invalid, that part of Section 8 which designates "tin cans" as garbage is wholly without effect, even though the parties consented to it.

Defendant city also contends that council ratified and adopted any changes which the agreement introduced.

Referring to Section 8 of the Agreement, counsel for the defendant city claims in his brief that "This change was approved as shown by approval of Resolution 1817/50 * * *. It will be noted that it was agreed "That the proposed contract for the collection of garbage and rubbish" was provided in this Resolution, which is proof that council consented to the inclusion of rubbish with garbage as agreed between the parties." (the inner quote is from the Resolution.)

The use of the word "rubbish" in the Resolution cannot serve to incorporate Section 8 of the Agreement into the Resolution by reference, since Section 8 does not mention "rubbish." On the contrary it classifies everything there described, as garbage.

Nor can the Resolution serve to amend Ordinance 3924/50 because such Resolution does not conform to the procedure of §4226 GC, by which existing legislation can be amended.

The required procedure for amending Ordinance 3924/50 is well illustrated by Ordinance 3994/50. The latter Ordinance expressly states that it is an Ordinance "to amend the first and second paragraphs of Section 5 of Ordinance No. 3924/50, by change and addition."

In the absence of an express intention in Resolution 1817/50 to amend Section 1 (a) and (b) of Ordinance 3924/50 which define Garbage and Rubbish it is concluded that Resolution 1817/50 does not and cannot ratify and approve the new definition of Garbage in Section 8 of the Agreement.

The answer to the first question raised by the plaintiff is that the wording of Section 8 of the Agreement which reads "and tin cans (Tin cans are those cans from which food is removed by the family in the usual course of conducting a household)" is clearly invalid. Being invalid it is not enforceable.

The second question raised by the plaintiff remains.

It is evident that Ordinance 3994/50 contemplates that the Board of Health shall procede to make separate garbage and rubbish collection contracts.

It is the expressed mandatory requirement of council that the Board of Health "immediately after the passage and legal publication of this Ordinance * * * shall advertise for bids for the collection of garbage, rubbish and both, covering the period of not less than five years at the option of the Board of Health."

It is self evident that Ordinance 3994/50 is not self executing.

The Ordinance, standing alone, does not terminate the plaintiff's agreement. It is only when the Board of Health undertakes the execution of the Ordinance, and pursuant to advertising lets a new contract for the exclusive collection of garbage, that the present Agreement might be superseded.

At that time plaintiff could abandon his Agreement. Or he could resist the letting of such a superceding contract. For such a new agreement would clearly invade and impair his Agreement with the Board of Health, if done within the two year term of the Agreement.

It is enough to say now that as long as the Board of Health does not carry out the mandate of Ordinance 3994/50 plaintiff's Agreement is not abrogated by the effect or the implications of the Ordinance.

But the plaintiff asks the court to order the Board of Health to carry out the mandatory requirements of Ordinance 3994/50, to advertise for bids and let contracts for the separate collection of garbage and rubbish.

This the court cannot do.

It has been previously pointed out that a Board of Health is an independent political subdivision of the state. **State, ex rel., v. Underwood, 137 Oh St, 1, 17 O. O. 298.**

A Board of Health cannot be compelled by mandamus to carry out the provisions of a city ordinance requiring that the Board of Health issue milk and cream vendor permits, and to make necessary inspections. **State, ex rel. Hanna, v. Spitler, 47 Oh Ap, 114.**

There it was said by the 3rd District Court of Appeals:

"We find no provision of law making a board of health of a city health district subject or amenable in any way to the government of the municipality with which the district is coextensive, except that appointments of members of the board are made by the mayor of such municipality, and such board, under the law constitutes a governmental agency separate and distinct from such municipality and not in any way subject to the jurisdiction of the municipality. It is said in **20 O. Jur., 572,** that: "Local health officers in the exercise of the power delegated to them are plainly engaged in a purely public service in the performance of strictly governmental duties. They cannot in any sense be considered as the agents of the corporation, which is, accordingly, not liable for their negligence or misdoings."

If a Board of Health cannot be compelled by mandamus to carry out mandatory requirements of a municipal ordinance, clearly here this court cannot issue any mandatory order which would compel the board to comply with Ordinance 3994/50.

If the Board, in its discretion, accepts the duty and power which Council seeks to vest the Board with under §4463 GC, the Board may act.

If the Board, in its discretion, declines to accept the delegation of power, given by Council under §4463 GC, Council is powerless to force compliance. This is true because the City and Board are coordinate branches of government, neither subservient to the other. And if Council cannot obtain compliance surely a private citizen cannot force the Board to carry out Ordinance 3994/50.

Council cannot compel the Board to act, any more than the Board could force the City of Warren to carry out a mandate, which the Board might seek to impose on the City through an order or regulation of the Board.

It is declared and ordered that the language of Section 8 of the Agreement which reads "and tin cans (Tin cans are those cans from which food is removed by the family in the usual course of conducting a household)" is deemed invalid, and said wording shall not be enforced.

548

It is further declared and ordered that except for the language of Section 8, herein declared to be invalid, the Agreement is in full force and effect.

It is further declared and ordered that the Agreement is not terminated or in any manner modified by Ordinance 3994/50.

It is finally declared and ordered that the Agreement may only be terminated in accordance with Section 16 of Ordinance 3924/50, unless, of course, it is terminated by agreement of the plaintiff and the Board.